[Civ. No. 1676.  First Appellate District.—February 18, 1916.]

GEORGE E. EVANS, Respondent, v. EDW. B. HINDES, Appellant.

CONTRACT—BROKER'S COMMISSION—MANNER OF PAYMENT—CONSTRUCTION.—Where a written contract, employing a real estate broker to effect an exchange of properties, provided for payment of a certain sum to the broker, and from the record it appears that after the negotiations for the exchange of properties were completed the defendant informed the broker that he would have to wait until a crop of potatoes belonging to him was harvested, which was agreed upon, and the parties then entered into a written addition to the agreement providing that when the crop was sold "the proceeds to the amount of $1,650 is to be turned over to me in liquidation of above indebtedness," the quoted language of the contract was

merely a limitation upon the amount of money to be paid to the broker from the proceeds of the crop, and where the crop sold for less than the amount of the broker's commission, the latter was entitled to recover the difference from the defendant.

APPEAL from the judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Perry Evans, for Appellant.

Olin L. Berry, for Respondent.

THE COURT.—The plaintiff, as assignee of E. J. Davis, a real estate broker, sues to recover a sum which he claims as a balance due upon a commission for effecting an exchange of properties for the defendant.

It is conceded that Davis was entitled under the contract as written to a commission for his services amounting to the sum of $1,650, but it is contended by the defendant that Davis agreed to accept in liquidation of his claim the proceeds of a certain potato crop, and that such proceeds having been turned over to him, the obligation under the contract was discharged, although Davis received only the sum of $670 as such proceeds.

The contract for the broker's commission is in the usual form and subscribed by the defendant. Immediately following it, and apparently on the same sheet of paper, and doubtless executed on the same day, is the following addenda:

"I, the undersigned, accept the above employment, and agree to extend the time of payment until such time as the crop is harvested, it being mutually understood that when the crop is sold, the proceeds to amount of sixteen hundred fifty ($1650.00) dollars is to be turned over to me in liquidation of above indebtedness.

"E. J. DAVIS."

From the record it appears that after the negotiations for the exchange of properties were completed, Davis and the defendant discussed and agreed upon the amount of the former's compensation. The amount being agreed upon, and the written form of contract providing that it should be payable upon the consummation of the exchange, the defendant informed Davis that unless he received some money from a certain

source, he would be unable to settle with Davis promptly, and that the latter would have to wait until he had harvested a crop of potatoes belonging to him, which would be in about sixty days. This was satisfactory to the broker, and the above quoted addition to the contract was signed. There seems to have been a further conversation concerning the time Davis should receive the amount of his commission, during which conversation it transpired that the defendant had been offered two thousand dollars or two thousand five hundred dollars for his potato crop. At this time apparently both parties expected that the proceeds from the crop would exceed the amount of the commission, so that a part of them would be payable to the defendant. Davis, according to his testimony, was not informed as to the proportionate interest in this crop owned by the defendant—which in fact was but one-fifth.

If there is any ambiguity in the memorandum regarding the payment to Davis of the proceeds of the crop, so as to make it susceptible of the construction contended for by the defendant, this ambiguity is removed, we think, by the testimony of the circumstances under which it was entered into, which strongly support the contention of the plaintiff that the language, "the proceeds to amount of $1,650 is to be turned over to me in liquidation of above indebtedness," was merely a limitation upon the amount of money to be paid to Davis from the proceeds of the crop—which interpretation also more readily accords with the natural and ordinary meaning of the words used than that contended for by appellant. It further appears that the appellant was disappointed with the trade he had made, so that a construction of the agreement which would diminish his liability would be more apt to suggest itself to him than to a disinterested reader of the language employed. Defendant had agreed to pay his broker $1,650, and the language of the memorandum above quoted cannot, in our opinion, be fairly construed as an agreement on the latter's part to accept less than this amount.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the district court of appeal on March 17, 1916.